HAROLD M. DeGROFF, JR., and SARAH M. DeGROFF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
De Groff v. Commissioner
Docket No. 2306-76.
United States Tax Court
T.C. Memo 1977-318; 1977 Tax Ct. Memo LEXIS 126; 36 T.C.M. (CCH) 1284; T.C.M. (RIA) 770318; Filed September 19, 1977. *126 Midwest Applied Science Corporation (MASC) offered stock pursuant to a plan adopted in 1967. The plan made no reference to sec. 1244, I.R.C. 1954, or the benefits thereunder. Further, the plan failed to limit the period during which the stock could be offered. In 1972, MASC stock purchased by petitioners pursuant to the 1967 plan became worthless. Held, petitioners are not entitled to treat their loss on the MASC stock as an ordinary loss. Phillip R. Scaletta, for the petitioners. Elsie Hall, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a $2,660.06 deficiency in petitioners' 1972 Federal income taxes. Other issues having been settled, we must determine whether a loss petitioners suffered when stock they owned became worthless was a loss on section 1244 stock. FINDINGS OF FACT This case was fully stipulated by the parties. Their stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners Harold M. DeGroff, Jr., and Sarah *128 M. DeGroff, husband and wife, timely filed their joint 1972 Federal income tax return, and were residents of Connersville, Indiana, when they filed their petition herein. Petitioner Harold M. DeGroff, Jr., was president and a member of the board of directors of Midwest Applied Science Corporation (hereinafter MASC). MASC's principal activity was offering consulting in the area of engineering analysis and design. MASC, a domestic corporation, was incorporated in Indiana on September 10, 1956. When initially incorporated, MASC was authorized 6,000 shares of voting common stock. As of September 30, 1962, 2,400 shares of the voting common stock were issued and outstanding. In order to raise additional capital, the 6,000 authorized shares were split 5 for 1, increasing the authorized voting common stock to 30,000 shares, 11,720 of which were acquired by an independent investor. In 1964 and 1965, a total of 2,172 shares of nonvoting, participating, callable MASC stock were issued. As of April 25, 1967, there were 24,656 shares of MASC voting common stock issued and outstanding, and there were 2,172 shares of MASC nonvoting stock issued and outstanding. At this time, there was no *129 prior offer to issue stock still outstanding. In order to increase the equity position of the company, the MASC board of directors, on April 6, 1967, resolved to increase the amount of authorized voting common stock from 30,000 shares to 52,000 shares, with the intent to offer the new stock to the shareholders of record at a price of $1.50 per share. This resolution was unanimously adopted at the April 6, 1967, meeting and reads in part: MINUTES OF SPECIAL MEETING OF BOARD OF DIRECTORS OF MIDWEST APPLIED SCIENCE CORP. RESOLVED, That this corporation take appropriate steps to increase the authorized stock from the existing 30,000 shares to 52,000 shares for the purpose of offering one share of such stock to each shareholder of record on this date at a price of $1.50 per share. BE IT FURTHER RESOLVED, That upon the receipt of the approved Articles of Amendment of the Articles of Incorporation from the Secretary of State such Articles shall be recorded in the Office of the Recorder of Tippecanoe County, Indiana; BE IT FURTHER RESOLVED, That within ten (10) days after the recording of the Articles of Amendment as indicated above, the appropriate corporate officers shall inform *130 all shareholders, regardless of class, of record on this date of their right to acquire one additional share of common stock for each share of common stock now held by them in the corporation at a price of $1.50 per share; at the expiration of thirty (30) days following the date of the sending of such notice any shareholder who has not accepted the right to purchase such additional shares of stock and has not made appropriate payment therefor shall be deemed to have forfeited his right to so acquire; BE IT FURTHER RESOLVED, That in the event that there are shares of common stock which have not been acquired by shareholders pursuant to the rights granted in the paragraph above after the expiration of the said thirty (30) day period, then in such event notice shall be given by the appropriate corporate officer to all shareholders who have exercised their right to acquire additional shares of stock in the corporation of the number of shares not previously acquired by other shareholders. Each such shareholder shall then have the right to buy the number of shares of common stock at $1.50 per share in proportion to the number of shares then registered in his name on the books and records *131 of the corporation. Any such shareholder who has not exercised this right shall be deemed to have forfeited his right to acquire such additional shares. BE IT FURTHER RESOLVED, That in the event that there are shares of stock which have not been acquired by shareholders having such right, then appropriate corporate officers shall give notice to all shareholders who have exercised their right to acquire additional shares of stock in the corporation of the number of shares not previously acquired by other shareholders. Each such shareholder shall then have the right to buy the number of shares of common stock at $1.50 per share in proportion to the number of shares then registered in his name on the books and records of the Corporation. Any such shareholder who has not exercised this right shall be deemed to have forfeited his right to acquire such additional shares. Subsequently at a shareholders meeting held on April 25, 1967, the resolution adopted by the board of directors at the April 6, 1967, meeting was adopted by the MASC shareholders. Following this meeting the State of Indiana, on May 4, 1967, authorized the sale of MASC stock as prescribed by the newly adopted resolutions. *132 Accordingly, on May 5, 1967, MASC's treasurer sent a memorandum to all MASC shareholders notifying them of their right to purchase additional MASC stock under the recently enacted resolution. In part that memorandum reads: According to these resolutions and the authorization received from the State of Indiana, 26,838 [sic] shares of voting stock are hereby for sale effective this date and for thirty (30) days hereafter. The sale of this stock is limited to the stockholders of record as of April 6, 1967. Each stockholder is allowed to purchase as many shares of stock as he owns at $1.50 per share. If you are interested in purchasing the stock authorized for sale to you please forward notification of your desire to purchase and an appropriate check to Midwest Applied Science Corp., Attention: Treasurer, on or before June 3, 1967. Any stock not sold prior to June 3 will be offered for sale to stockholders interested in purchasing additional shares in a proportion to the shares they own on that date. Pursuant to the offering made May 5, 1967, petitioners acquired 3,067 [1] shares of MASC common stock. This stock was acquired in the following manner. On May 9, 1967, petitioners *133 purchased 2,520 shares of MASC common stock for which they paid $3,780. On July 13, 1967, petitioners purchased 962 shares of MASC common stock for which they paid $1,443. On August 3, 1967, petitioners purchased an additional 20 shares of MASC common stock for $30. On September 10, 1971, petitioners transferred, for cost, 370 shares of MASC common stock to other MASC shareholders. On November 16, 1971, petitioners transferred, for cost, an additional 65 shares of MASC common stock to other MASC shareholders. The net effect of these transfers is that petitioners were left with a total of 3,067 shares of MASC common stock acquired pursuant to the May 5, 1967, offering. When the MASC board of directors adopted the resolution *134 providing for the issuance of additional MASC common stock, MASC was a small business corporation as defined by section 1244(c)(2). [2] During the five most recent taxable years ending before December 31, 1972, MASC derived more than 50 percent of its aggregate gross receipts from sources other than royalties, rents, dividends, interests, annuities, and sales or exchanges of securities. On December 1, 1972, MASC ceased business. Rather than have the corporation declare bankruptcy, petitioner Harold M. DeGroff agreed to assume the obligations of the corporation. On Petitioners' 1972 Federal income tax return, petitioners claimed an ordinary loss of $6,744.51 for their MASC stock. The notation on Form 4797, filed with their return, states "MASC stock (worthless) (sec. 1244 stock) 3,404 shares." Respondent in his notice of deficiency stated that the $6,744.51 loss claimed as a section 1244 stock loss "does not constitute an ordinary loss within the meaning of Section 1244 of the IRC of 1954 and it is further determined that such stock does not qualify or meet the requirements *135 of said section." By stipulation, the parties agree that the amount of the claimed section 1244 loss now in issue is $4,600. OPINION Petitioners suffered a $4,600 loss in 1972 when MASC common stock which they had acquired in 1967 became worthless. The only issue we must resolve is whether petitioners' loss was a loss on section 1244 stock. If so, petitioners's loss will be treated as an ordinary loss rather than a loss from the sale or exchange of a capital asset. Sec. 1244(a). Section 1244(c) lists specific requirements that must be met for stock to qualify as section 1244 stock. Of particular interest to the case before us is the requirement of section 1244(c)(1)(A) which states, For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if * * * such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan * * *. Under the authority delegated to him by section 1244(e), the Secretary promulgated section 1.1244(c)-1(c), Income Tax Regs., which expands on the requirements of section 1244(c)(1)(A). Section *136 1.1244(c)-1(c)(1), Income Tax Regs., provides in part that in order to qualify as section 1244 stock, The common stock must be issued pursuant to a written plan adopted by the corporation after June 30, 1958, to offer only such stock during a period specified in the plan ending not later than two years after the date the plan is adopted.The two-year requirement referred to in the preceding sentence will be met if the period specified in the plan is based upon the date when, under the rules or regulations of a Government agency relating to the issuance of the stock, the stock may lawfully be sold, and it is clear that such period will end, and in fact it does end, within two years after the plan is adopted. The plan must specifically state, in terms of dollars, the maximum amount to be received by the corporation in consideration for the stock to be issued pursuant thereto. The requirement of a written plan and these regulations have been specifically approved and followed on a number of occasions. Kaplan v. Commissioner,59 T.C. 178, 181 n. 2 (1972); Hayden v. Commissioner,52 T.C. 1112, 1123 (1969); Morgan v. Commissioner,46 T.C. 878, 889 (1966). *137 Petitioners, who have the burden of proof, Morgan v. Commissioner,supra;Rule 142(a), Tax Court Rules of Practice and Procedure, contend that the "Minutes of Special Meeting of Board of Directors of Midwest Applied Science Corp." held on April 6, 1967, "Minutes of Special Meeting of Shareholders of Midwest Applied Science Corp." held on April 25, 1967, and the memorandum sent to all MASC stockholders by MASC's treasurer on May 5, 1967, taken together constitute a written plan that meets the requirements of section 1244 and the regulations thereunder. In contrast, respondent contends that the plan under which petitioners purchased their MASC stock failed to satisfy the requirements of section 1244 because it did not limit the period during which shareholders could purchase stock to two years. Respondent further contends that the plan failed to specifically state, in terms of dollars, the maximum amount to be received by the corporation under the plan. In response to petitioners' contention, we note that it is entirely proper to view a series of documents, when read together, as a section 1244 plan. Hayden v. Commissioner,supra at 1124. *138 The documents, when taken together, must clearly show an intent to take advantage of the benefits provided by section 1244, must indicate the maximum amount of money to be received under the offering and the maximum duration, not to exceed two years, of the offering. Hayden v. Commissioner,supra.It must be unnecessary to search for further explanation and reference to events outside the writing for the plan to qualify as a written plan satisfying the requirements of section 1244. Godart v. Commissioner,51 T.C. 937, 942 (1969), affd. 425 F.2d 633 (2d Cir. 1970). In the case before us, there is no doubt that MASC, through its directors and shareholders, adopted a plan to issue additional common stock. This plan, however, falls short of the type of plan contemplated by section 1244. First, there is no indication in the terms of the plan that the stock was issued in order to obtain the benefits of section 1244. As noted by Rickey v. Commissioner,502 F. 2d 748, 755 (9th Cir. 1974), affg. 54 T.C. 680 (1970), Congress required a written "plan which evidences that the corporation is aware of § 1244 *139 * * * [so that] investments made without knowledge of § 1244 will not be subsidized." Similarly, see Godart v. Commissioner,425 F. 2d 633, 638 (2d Cir. 1970), stating that for the plan to be effective, "there must be some substantially contemporary objective evidence that the plan was adopted with § 1244 in view." Nowhere in the plan before us was section 1244 mentioned; nowhere were benefits similar to those provided by section 1244 mentioned; and nowhere is there contemporary evidence that the plan was adopted with section 1244 in view. Even if petitioners could convince us that the stock was issued with section 1244 in mind, we would still be required to conclude that the stock was not section 1244 stock. Nowhere on the face of the plan is the stock offering limited to a duration of two years. Although the initial offering lasted only 30 days those stockholders who purchased stock in the initial offering were entitled to purchase additional stock. There was no time limitation under which this additional stock was required to be purchased. Recognizing this weakness, petitioners contend that, "It can be inferred from the length of the first period that it *140 was intended that the second and third periods would also be of short and limited duration." As we noted in Godart v. Commissioner,51 T.C. 937, 943 (1969), Nowhere in the documents can we ascertain as "specified" in a "written plan" a period of offering which is to end "not later than two years after the date such plan was adopted" as required by section 1244(c). * * *
Only by inference and conjecture and reference to factors and events outside the alleged plan can it be determined that there is such a period of offering. [Emphasis added.] Clearly, the inference petitioners wish us to make does not satisfy the requirements of section 1.1244(c)-1(c), Income Tax Regs.
Because MASC's offering never intended to take advantage of the benefits provided by section 1244, and further, because the offering failed to specify a period, ending not later than two years after the date the plan was adopted, during which the stock was offered, we conclude petitioners' stock was not section 1244 stock. Accordingly, petitioners are not entitled to treat their loss as an ordinary loss. To reflect the foregoing, Decision will be entered for the respondent *141 . Footnotes
1. The parties have stipulated that petitioners owned 4,067 shares of MASC common stock as a result of the May 5, 1967, offering and subsequent sales. They further agree that, based on the ownership of their stock, petitioners sustained a $4,600.00 loss. The parties have made an error in their stipulations: as a result of the May 5, 1967, offering and subsequent sales, petitioners owned 3,067 shares of MASC common stock with a cost basis therein of $4,600.50.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended.↩